UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| **JOSE VELEZ,**<br><br>Plaintiff,<br><br>v.<br><br>**TESLA, INC., a Delaware corporation,**<br><br>Defendant. | Case No. _____<br><br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

## COMPLAINT

Plaintiff JOSE VELEZ, proceeding pro se, hereby files this Complaint against Defendant TESLA, INC., and alleges as follows:

## NATURE OF THE ACTION

1. This is a products liability and negligence action arising from injuries sustained by Plaintiff Jose Velez on December 3, 2025, when he was an innocent front-seat passenger in a 2024 Tesla Model 3 equipped with Tesla's Autopilot and Full Self-Driving ("FSD") systems. While navigating a curve on a rural road in Cocoa, Florida, Tesla's Autopilot system catastrophically failed, abruptly disengaging mid-curve without warning, causing the vehicle to collide with a stationary utility pole.

2. Plaintiff, who had no control over the vehicle's operation and no ability to intervene in the Autopilot system's decisions, sustained serious personal injuries as a direct result of Tesla's defectively designed autonomous driving systems.

3. Tesla's own telemetry data establishes that the Autopilot system was in ACTIVE_NOMINAL status for 28.3 seconds before it abruptly abandoned vehicle control while navigating a left-hand curve on a rural road at an unsafe speed. The system transitioned to UNAVAILABLE mid-curve, with the steering wheel turned at -78.70 degrees, leaving

1

only 6.01 seconds before the vehicle collided with a utility pole. Tesla's Automatic Emergency Braking ("AEB") system, despite being enabled, failed to intervene to prevent or mitigate the collision.

## PARTIES

4. Plaintiff JOSE VELEZ is an individual and a citizen of the State of Illinois, residing at 1449 S Michigan Ave STE 13234, Chicago, IL 60605-2810. Plaintiff is a 42-year-old attorney who has practiced civil rights law for the past fourteen years.

5. Defendant TESLA, INC. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 1 Tesla Road, Austin, Texas 78725. Tesla designs, manufactures, markets, distributes, and sells electric vehicles, including the 2024 Tesla Model 3 involved in this incident, as well as the Autopilot and Full Self-Driving software systems installed therein.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity of citizenship) because: (a) Plaintiff is a citizen of Illinois; (b) Defendant Tesla, Inc. is a citizen of Delaware (its state of incorporation) and Texas (its principal place of business); and (c) the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in Brevard County, Florida, which is within the Orlando Division of the Middle District of Florida.

8. This Court has personal jurisdiction over Defendant Tesla, Inc. because Tesla conducts substantial business in the State of Florida, sells its vehicles in Florida, maintains service centers in Florida, and the tortious conduct and resulting injuries occurred in Florida.

## FACTUAL ALLEGATIONS

*A. The Vehicle and Its Technology*

2

9. The subject vehicle is a 2024 Tesla Model 3 Dual Motor, Long Range AWD, bearing Vehicle Identification Number (VIN) 5YJ3E1EB6RF809886, Ultra Red exterior color.

10. At the time of the incident, the vehicle was equipped with software version v12 (2025.38.9 build fe714a33a545) and FSD version v12.6.4, utilizing HW3 end-to-end neural network architecture.

11. The vehicle had an odometer reading of approximately 6,936 miles at the time of the incident.

12. Tesla markets its Autopilot and FSD systems as advanced driver assistance technologies capable of handling various driving tasks. Tesla's FSD system utilizes eight cameras and an end-to-end neural network to process visual information and make driving decisions.

### B. The December 3, 2025 Incident

13. On December 3, 2025, at approximately 2:14 p.m. EST, Plaintiff Jose Velez was a front-seat passenger in the subject Tesla Model 3, traveling on Rosa L. Jones Drive in Cocoa, Florida.

14. Rosa L. Jones Drive is a rural, secondary road featuring sharp curves, posted advisory speed signage (15 mph for curves), "REDUCED SPEED AHEAD" warning signs, and roadside hazards including utility poles.

15. The vehicle's Autopilot system was engaged and operating in ACTIVE_NOMINAL status as it approached a left-hand curve on Rosa L. Jones Drive.

16. Despite the presence of posted speed warning signs indicating a 15 mph advisory speed for the curve, the Tesla's Autopilot system was traveling at 37.92 kph (approximately 23.6 mph)—nearly 60% faster than the posted advisory speed.

17. At 19:14:37.313 UTC (2:14:37 p.m. EST), while the vehicle was actively navigating the curve with a steering angle of -78.70 degrees, the Autopilot system abruptly transitioned from ACTIVE_NOMINAL to UNAVAILABLE, abandoning control of the vehicle mid-curve.

18. The driver attempted to regain control, with the steering wheel angle oscillating through a 660-degree range within 2 seconds (from +385.89

3

degrees to -275 degrees), while stability control and traction control systems activated, indicating extreme vehicle instability.

19. Despite the imminent collision, Tesla's Automatic Emergency Braking (AEB) system showed "SNA" (Signal Not Available) status and failed to intervene.

20. At 19:14:43.325 UTC, approximately 6.01 seconds after Autopilot disengaged, the vehicle collided with a stationary utility pole at an impact speed of approximately 39 kph (24.2 mph).

21. The collision was investigated by the Cocoa Police Department under Case #2025-00053493. The vehicle was towed from the scene by Tron's Auto & Towing Inc. (DBA Chuck's Towing Service).

### C. Plaintiff's Status as an Innocent Passenger

22. Plaintiff Jose Velez was a front-seat passenger in the vehicle at the time of the collision. He had no control over the vehicle's operation, no ability to override the Autopilot system, and no responsibility for the speed at which the vehicle was traveling.

23. Plaintiff had no access to any warnings that may have been displayed to the driver regarding Autopilot system limitations.

24. Plaintiff did not agree to Tesla's terms of service, did not receive warnings about Autopilot limitations, and did not assume any risk associated with the system's operation.

25. Plaintiff was entirely dependent on Tesla's Autopilot system to operate safely, and that system catastrophically failed.

### D. Plaintiff's Injuries and Damages

26. As a direct and proximate result of the collision caused by Tesla's defective Autopilot system, Plaintiff has sustained serious personal injuries, including but not limited to:

      a. Back pain that commenced immediately following the incident and has persisted;

      b. Persistent numbness and tingling in both hands since the incident;

4

c.Cervical spine injuries, including but not limited to potential disc herniation, spinal cord compression, and/or cervical radiculopathy;

d.Peripheral nerve damage;

e.Soft tissue injuries including strains, sprains, and contusions;

f.Traumatic stress and emotional distress;

g.Other injuries to be identified through ongoing medical evaluation.

27.Plaintiff is currently under active medical care and undergoing diagnostic evaluation, including cervical MRI to evaluate for disc herniation and spinal cord compression, electromyography (EMG) to assess electrical activity in muscles and identify nerve damage, and nerve conduction studies (NCS) to measure the speed and strength of signals traveling through peripheral nerves.

28.Plaintiff's injuries have materially impaired his ability to practice law, work that demands extensive document review, legal research, fine motor control for handwriting and typing, and courtroom advocacy.

29.Plaintiff had no pre-existing conditions that could account for his symptoms prior to this incident.

### E.Economic Damages

30.As a direct and proximate result of the collision caused by Tesla's defective Autopilot system, Plaintiff has incurred and will continue to incur substantial economic damages, including:

a.Vehicle Repair Costs: The collision caused extensive damage to the 2024 Tesla Model 3 requiring comprehensive repairs. According to the preliminary repair estimate prepared by Central Florida Paint & Body (RO Number 5627, dated December 23, 2025), the total cost of vehicle repairs is TWENTY-TWO THOUSAND SEVEN HUNDRED DOLLARS AND FORTY-SEVEN CENTS ($22,700.47), which includes replacement of the front bumper assembly, left headlamp, left fender, steering gear assembly, front suspension components, and extensive refinishing work;

5

b.Towing and Storage Charges: Following the collision, the vehicle was towed by Tron's Auto & Towing Inc. (DBA Chuck's Towing Service) pursuant to Cocoa Police Department rotation. The total towing, storage, and recovery charges amounted to NINE HUNDRED FIFTEEN DOLLARS AND SEVENTY-FIVE CENTS ($915.75), as documented in the Impound Receipt (Reference #34081, dated December 4, 2025);

c.Time and Expenses for Handling This Matter: Plaintiff has expended and will continue to expend substantial time, effort, and resources in connection with this matter, including but not limited to: time spent communicating with insurance companies, coordinating vehicle repairs, obtaining and reviewing repair estimates, arranging transportation, attending medical appointments related to injuries sustained in the collision, researching legal claims, preparing litigation documents, and otherwise addressing the consequences of Tesla's defective product;

d.Loss of Use: Plaintiff has been and will continue to be deprived of the use of his vehicle during the repair period;

e.Past and future medical expenses related to treatment of injuries sustained in the collision.

31.The documented vehicle repair costs ($22,700.47) and towing charges ($915.75) total TWENTY-THREE THOUSAND SIX HUNDRED SIXTEEN DOLLARS AND TWENTY-TWO CENTS ($23,616.22) in direct economic damages, not including medical expenses, lost income, or the value of Plaintiff's time expended in addressing this matter.

## F.Tesla's Knowledge of Autopilot Defects and Prior Incidents

32.Tesla has long been aware of defects and limitations in its Autopilot and FSD systems. The National Highway Traffic Safety Administration (NHTSA) currently has seven active investigations into Tesla's automation systems.

33.NHTSA Investigation PE25012 (October 2025) examines FSD traffic violations across 2.88 million vehicles, documenting over 80 incidents including red light violations, wrong-way driving, and turn lane violations.

6

34. NHTSA Investigation PE24031 (October 2024) investigates FSD collisions in reduced visibility conditions, documenting one pedestrian fatality.

35. NHTSA Investigation RQ24009 (April 2024) questions whether the remedy from Recall 23V838 was effective, finding that post-remedy crashes continued.

36. In December 2023, Tesla issued Recall 23V838 affecting over 2 million vehicles for Autopilot system defects. NHTSA's Defect Information Report identified Tesla as an "industry outlier" for mismatching weak driver engagement monitoring with permissive automation capabilities.

37. In August 2025, a jury in the Southern District of Florida in the case of Benavides v. Tesla, Inc. returned a verdict of $242.6 million against Tesla—including $200 million in punitive damages—after finding that Tesla's Autopilot system was defectively designed because it could be activated in unsafe conditions and on roads outside its operational design domain.

38. Expert testimony in the Benavides case established that Tesla knowingly allows Autopilot to operate in operational domains for which it was not designed, including on rural roadways lacking adequate lane markings or traffic controls.

39. Despite this knowledge, Tesla failed to implement adequate safeguards, including geofencing technology that would prevent Autopilot activation on roads outside its operational design domain—technology that competing automakers have successfully implemented.

### G. Tesla's Pattern of Evidence Spoliation and Discovery Abuse

40. Tesla has a documented pattern of evidence spoliation and discovery abuse in Autopilot litigation. Tesla's systems automatically upload collision snapshot data to Tesla servers within approximately three minutes of an incident, after which the local copy is automatically deleted, making Tesla the sole custodian of critical crash data.

41. In October 2025, in the case of Garcia/Alcala v. Tesla, a Florida court imposed sanctions against Tesla for "deliberate" and "willful" discovery violations after Tesla falsely claimed inability to locate Test Incident Reports ("TIRs") when Tesla possessed thousands of pages of such documents.

42. On December 3, 2025, the same day as the incident giving rise to this action, a comprehensive Litigation Hold Notice was transmitted to Tesla demanding immediate preservation of all evidence. Despite this demand, Tesla has not provided any documented reason for the Autopilot disengagement.

43. The telemetry data shows the system transitioned from ACTIVE_NOMINAL to UNAVAILABLE, but no fault code, sensor error, system limitation, or data confidence issue has been identified to explain this transition. The complete absence of any explanation supports an inference that the missing data would be unfavorable to Tesla.

## <u>COUNT I</u>

### STRICT PRODUCTS LIABILITY – DESIGN DEFECT

44. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

45. Defendant Tesla designed, manufactured, marketed, distributed, and sold the 2024 Tesla Model 3 and its Autopilot and FSD systems.

46. The Autopilot and FSD systems installed in the subject vehicle were defectively designed in one or more of the following ways:

a. The system permitted activation on rural roads outside its operational design domain where it lacked reliable mapping data and could not safely operate;

b. The system failed to recognize and obey posted advisory speed signs;

c. The system failed to adequately assess curve geometry and reduce speed to safe levels;

d. The system abandoned vehicle control abruptly, mid-curve, without adequate warning or time for driver intervention;

e. The Automatic Emergency Braking system failed to activate to prevent or mitigate the collision;

f. The system lacked geofencing or other restrictions to prevent operation on roads outside its safe operational domain.

47. Under the consumer expectations test applicable in Florida pursuant to Aubin v. Union Carbide Corp., 177 So.3d 489 (Fla. 2015), the Autopilot and FSD systems were defective because they did not perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner. An ordinary consumer would expect that a system marketed as "Autopilot" and "Full Self-Driving" would only activate on roads where it could operate safely, would recognize and obey posted speed warnings, would not abandon control mid-maneuver, and would activate emergency braking to prevent imminent collisions.

48. Under the risk-utility test, feasible alternative designs existed that would have prevented Plaintiff's injuries, including data confidence thresholds to refuse engagement on roads with insufficient mapping data, geofencing to restrict operation on rural roads outside the system's operational design domain, improved speed sign recognition, curve geometry analysis for real-time speed adjustment, graceful disengagement protocols rather than abrupt mid-curve handoffs, and reliable AEB systems.

49. Plaintiff was a foreseeable user of the Tesla vehicle. Under West v. Caterpillar Tractor Co., 336 So.2d 80 (Fla. 1976), strict liability extends to any person injured by a defective product, and passengers are clearly foreseeable occupants requiring no privity with the manufacturer.

50. The defective design of Tesla's Autopilot and FSD systems was a direct and proximate cause of the collision and Plaintiff's resulting injuries.

51. As a direct and proximate result of the defective design of Tesla's products, Plaintiff has suffered and continues to suffer damages including vehicle repair costs, towing and storage charges, past and future medical expenses, lost income, reduced earning capacity, time and expenses for handling this matter, pain and suffering, mental anguish and emotional distress, and loss of enjoyment of life.

## COUNT II

### STRICT PRODUCTS LIABILITY – FAILURE TO WARN

52. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

53. Defendant Tesla failed to adequately warn users and passengers about the dangerous limitations of its Autopilot and FSD systems, including the system's inability to safely operate on rural roads, the possibility of abrupt mid-maneuver disengagement, and the conditions under which the AEB system may be unavailable.

54. Tesla's marketing of "Autopilot" and "Full Self-Driving" creates false expectations about the system's capabilities. California's Department of Motor Vehicles ruled in December 2025 that Tesla's FSD marketing claims are "actually, unambiguously false and counterfactual."

55. Any warnings provided by Tesla are buried in owner's manuals and contradicted by Tesla's marketing messages and public statements by its executives.

56. Critically, passengers like Plaintiff receive no warnings whatsoever—they are entirely dependent on the system's safe operation without any opportunity to assess whether Autopilot should be engaged on a particular road.

57. Tesla's failure to adequately warn was a direct and proximate cause of the collision and Plaintiff's resulting injuries.

58. As a direct and proximate result of Tesla's failure to warn, Plaintiff has suffered and continues to suffer damages including vehicle repair costs, towing and storage charges, past and future medical expenses, lost income, reduced earning capacity, time and expenses for handling this matter, pain and suffering, mental anguish and emotional distress, and loss of enjoyment of life.

## COUNT III

### NEGLIGENCE

59. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

60. Defendant Tesla owed a duty of reasonable care to Plaintiff and other foreseeable users and passengers of its vehicles to design, manufacture, test, and market its Autopilot and FSD systems in a manner that would not create an unreasonable risk of harm.

61. Tesla breached its duty of care in one or more of the following ways:

a.Failing to implement adequate testing of Autopilot and FSD systems on rural roads;

b.Failing to implement geofencing or other restrictions to prevent operation outside the system's operational design domain;

c.Failing to design adequate speed sign recognition capabilities;

d.Failing to design adequate curve geometry assessment and speed adjustment protocols;

e.Failing to design graceful disengagement protocols that provide adequate time for driver intervention;

f.Failing to ensure the AEB system remained functional and available;

g.Failing to adequately warn of the system's limitations;

h.Failing to take corrective action despite knowledge of similar incidents and ongoing NHTSA investigations.

62.Tesla's breach of its duty of care was a direct and proximate cause of the collision and Plaintiff's resulting injuries.

63.As a direct and proximate result of Tesla's negligence, Plaintiff has suffered and continues to suffer damages including vehicle repair costs, towing and storage charges, past and future medical expenses, lost income, reduced earning capacity, time and expenses for handling this matter, pain and suffering, mental anguish and emotional distress, and loss of enjoyment of life.

## COUNT IV

### PUNITIVE DAMAGES

64.Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

65.Pursuant to Florida Statutes § 768.72, Plaintiff is entitled to recover punitive damages because Tesla's conduct demonstrates intentional misconduct or gross negligence constituting a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.

66.Tesla's conduct warranting punitive damages includes:

11

a. Consciously deciding to permit Autopilot operation outside its design domain despite knowledge that the system could not safely operate on rural roads;

b. Refusing to implement geofencing technology to prevent operation in unsafe conditions, despite knowing that competing automakers have successfully implemented such technology;

c. Marketing "Full Self-Driving" capabilities that do not exist, creating false expectations about system safety;

d. Engaging in a pattern of evidence spoliation and discovery abuse to conceal evidence of defects;

e. Continuing to sell and operate vehicles with known defects despite multiple NHTSA investigations and a prior $242.6 million verdict.

67. The jury in Benavides v. Tesla awarded $200 million in punitive damages based on similar conduct. Tesla's continued pattern of misconduct since that verdict demonstrates ongoing conscious disregard for safety.

## DAMAGES

68. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has suffered and continues to suffer the following damages:

a. Vehicle repair costs in the amount of $22,700.47;

b. Towing and storage charges in the amount of $915.75;

c. Time and expenses for handling this matter;

d. Loss of use of vehicle;

e. Past medical expenses;

f. Future medical expenses;

g. Past lost income and earnings;

h. Future lost income and reduced earning capacity;

i. Past and future pain and suffering;

j. Mental anguish and emotional distress;

k. Loss of enjoyment of life;

l. Physical impairment and disability;

m. Punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jose Velez respectfully requests that this Court enter judgment in his favor and against Defendant Tesla, Inc. as follows:

A. Compensatory damages in an amount in excess of $75,000.00, exclusive of interest and costs, to be determined according to jury trial;

B. Punitive damages in an amount sufficient to punish Defendant and deter similar conduct, to be determined according to jury trial;

C. Pre-judgment and post-judgment interest as allowed by law;

D. Costs of this action;

E. Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.


Respectfully submitted,


_____

**JOSE VELEZ**
*Plaintiff, Pro Se*
1449 S Michigan Ave STE 13234
Chicago, IL 60605-2810
Telephone: (787) 529-7171
Email: josevelez@proton.me


Dated: _____